This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40276**

**ERIC TAFOYA,**

Appellant/Cross-Appellee-Petitioner,

v.

**CITY OF ESPAÑOLA,**

Appellee/Cross-Appellant-Respondent.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason Lidyard, District Court Judge**

New Mexico Firm, LLC
Nathaniel V. Thompkins
Santa Fe, NM

for Appellant

N.M. Local Government Law, LLC
Charles Rennick
Lea Corinne Strife
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** While employed as the Deputy Fire Chief for Appellee City of Española (the City), Appellant Eric Tafoya was served with a "Notice of Contemplated Disciplinary Action" related to allegations that he sexually harassed a subordinate. Tafoya invoked his right under City of Española Personnel Policy (June 26, 2007, amended Apr. 29, 2008 and

Aug. 25, 2009)[1] (Personnel Policy), to a pre-termination informal meeting with Fire Chief Ron Padilla to contest the allegations. After the informal meeting, Tafoya's employment with the City was terminated. Tafoya appealed his termination to the City's grievance board. Following a post-termination hearing, the hearing officer found that the allegations against Tafoya were substantiated but concluded they did not amount to a violation of the City's sexual harassment policy, thereby finding in favor of Tafoya. Despite this conclusion, the hearing officer did not direct that Tafoya be reinstated as Deputy Fire Chief or be awarded back pay. Tafoya and the City both appealed to the district court. The district court granted the City's cross-appeal, denied Tafoya's appeal, and reversed the hearing officer's decision that a violation of the City's sexual harassment policy had not occurred. For the following reasons, we affirm the district court.

## DISCUSSION[2]

**{2}** Tafoya's brief in chief begins with a statement of issues that identifies sixteen different alleged errors committed by the district court.[3] Despite this, Tafoya chose not to brief each issue individually or explain why certain issues could be, or should be, logically analyzed together. Put simply, as the City noted in its answer brief, Tafoya's briefing unnecessarily complicates review of his arguments. In fact, the City, unsure of Tafoya's specific arguments, began its answer brief by stating its belief that Tafoya was advancing four distinct arguments and responded accordingly. Tafoya did not file a reply brief.

**{3}** Having reviewed the briefs, we agree with the City that Tafoya appears to be advancing four distinct arguments. However, our framing of those issues differs slightly. We understand Tafoya to be arguing (1) his due process rights were violated because the City Attorney failed to promulgate rules of procedure for the post-termination hearing and because Tafoya was not allowed to cross-examine his accusers; (2) the legal residuum rule was violated; (3) the district court's determination that the City had sufficient grounds for Tafoya's termination is not supported by substantial evidence, is arbitrary and capricious, and is not in accordance with law; and (4) in light of the preceding argument, Tafoya was entitled to reinstatement and back pay. We address each issue in turn.

---

[1] The personnel policy can be viewed at http://www.espanolanmusa.org/DocumentCenter/View/154/Personnel-Policy-2009-PDF.

[2] Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

[3] We remind counsel for Tafoya that litigants are encouraged to limit the number of issues they choose to raise on appeal in order to ensure that those presented are adequately argued and are supported by both authority and properly cited facts in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

**I.     Tafoya's Procedural Due Process Rights Were Not Violated**

**{4}**     The parties do not dispute that Tafoya had a property right in his continued employment or that the City could not deprive him of that property right without satisfying procedural due process. *See, e.g.*, *In re Termination of Boespflug*, 1992-NMCA-138, ¶ 5, 114 N.M. 771, 845 P.2d 865. The dispute lies in whether procedural due process, in these circumstances, was violated by the City Attorney's failure to promulgate rules of procedure for the post-termination hearing or by Tafoya being deprived of the opportunity to cross-examine his accusers. "The question of whether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266.

**A.     Rules of Procedure**

**{5}**     "It is well established that due process claims must be preserved in administrative proceedings, subject to the usual exceptions to preservation." *Shook v. Governing Body of City of Santa Fe*, 2023-NMCA-086, ¶ 26, 538 P.3d 466; *see* Rule 12-321(B) NMRA (listing preservation exceptions). Here, Tafoya did not raise the issue of the city attorney's failure to promulgate rules of procedure for the hearing as mandated by the personnel policy until after the hearing officer had rendered his decision. *See* Rule 12-321(A) (stating that "[t]o preserve an issue for review, it must appear that a ruling or decision by the [hearing officer] was fairly invoked"); *see also Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (explaining that "[t]o preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [hearing officer] on the same grounds argued in the appellate court" (internal quotation marks and citation omitted)). Because we agree with the City that this issue was not preserved and Tafoya did not avail himself of the opportunity to explain in a reply brief whether an exception to preservation applies or whether we should exercise our discretion to review the unpreserved issue, we decline to further address it. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("[G]enerally, [we] will [not] address issues not preserved below and raised for the first time on appeal."); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that courts normally do not review for fundamental or plain error when not requested by the appellant).

**B.     Opportunity to Cross-Examine**

**{6}**     Preliminarily, we note that Tafoya asserted in his briefing that the hearing officer concluded that Tafoya's due process rights were violated. In support, Tafoya directs us to the following statement contained in the hearing officer's written decision: "The inability of . . . [Tafoya] to cross-examine those bringing testimony leading to the termination of his otherwise successful 15[-]year career must be given due consideration in the process." We disagree that this statement can be properly construed as a conclusion that Tafoya's due process rights were violated. Nevertheless,

even if it could be so construed, we are not persuaded the district court erred by concluding that Tafoya received the process he was due.

**{7}**    "Constitutional due process does not require an agency to afford [Tafoya] all elements of a traditional judicial proceeding." *See Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 32, 137 N.M. 161, 108 P.3d 1019 (alteration, internal quotation marks, and citation omitted). "In general, the right to due process in administrative proceedings contemplates only notice of the opposing party's claims and a *reasonable* opportunity to meet them." *Id.* (internal quotation marks and citation omitted). In determining whether additional process is due in an administrative proceeding, we apply the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires us to consider "[t]he importance of the individual's and administrative body's interests, together with the risk of an erroneous deprivation of such private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Archuleta*, 2005-NMSC-006, ¶¶ 31-32 (alteration, internal quotation marks, and citation omitted).

**{8}**    The district court applied the *Mathews* test and concluded that Tafoya "received all the process he was due as a matter of law." Tafoya asserts this conclusion "is contrary to law," but does not provide an explanation or citation to legal authority to support his position. Absent such an argument from Tafoya, we need not consider the issue further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)); *State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("We will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists.").

**{9}**    Notwithstanding the deficiencies in Tafoya's briefing, we observe that an opportunity to cross-examine witnesses was established through Personnel Policy § 10.5 at 54, and Tafoya failed to take advantage of such opportunity. Personnel Policy § 10.5 at 54 sets out the procedure for filing an appeal, for the appointment of the hearing officer, and for the hearing officer's duties in conducting the post-termination hearing. As relevant to Tafoya's cross-examination claim, Personnel Policy § 10.5(C)(2)-(4) at 54 provides:

> 2.    Witnesses pertinent to the grievance *may* be called and will be sworn in by the [h]earing [o]fficer prior to giving testimony[;]

> 3.    Witnesses will identify themselves for the record, giving their name, address, and any other information that may be pertinent to the grievance[;]

> 4.    After a witness has testified, the [h]earing [o]fficer *shall* permit the opposing party to the grievance to examine the witness.

(Emphasis added.) Significantly, Personnel Policy § 10.5(C)(2) at 54 provides for witnesses to be called by the parties, and Personnel Policy § 10.5(C)(4) at 54 mandates that witnesses who are called are subject to cross-examination. As well, we do not see any limitation in Personnel Policy § 10.5 prohibiting a party from calling any witness they wish as long as the witness is "pertinent to the grievance." *See* Personnel Policy § 10.5(C)(2) at 54.

**{10}** Here, we note that Tafoya does not contend that he was not aware of these procedures or that they were not followed. As for Tafoya's specific contention that he was prevented from cross-examining the complaining witnesses—neither of whom testified during the proceeding, but instead provided sworn affidavits—we observe Tafoya does not contend that he was prohibited from calling any witness he wanted, including Cadet Hart and Lieutenant Theresa Martinez. Indeed, Tafoya submitted a witness list, but did not list either Cadet Hart or Lieutenant Martinez. As we pointed out, Personnel Policy § 10.5(C)(2) does not limit what witnesses a party may call except that the witness be relevant to the issues at hand. Tafoya's complaint is that he was unable to cross-examine Cadet Hart and Lieutenant Martinez, but we perceive the right of cross-examination bestowed by the City's policy to apply to witnesses that testify during a post-termination hearing, not those that do not. Tafoya could have listed on his witness list and called either Cadet Hart or Lieutenant Martinez but he apparently chose not to. Tafoya's failure to call either Cadet Hart or Lieutenant Martinez repudiates his contention that he was deprived of due process because he could not cross-examine the witnesses against him. If Tafoya wanted to call Cadet Hart and Lieutenant Martinez to confront them and cross-examine them, he should have done so, particularly given the City opted not to. Consequently, Tafoya should not be heard to complain about that which he could do, but chose not to do.

## II.     Tafoya Did Not Preserve His Arguments Concerning the Legal  Residuum Rule

**{11}** Tafoya interspersed arguments concerning the legal residuum rule throughout his brief. *See Anaya v. N.M. State Pers. Bd.*, 1988-NMCA-077, ¶ 15, 107 N.M. 622, 762 P.2d 909 ("The legal residuum rule does not require that all evidence considered by the administrative agency be legally admissible evidence, but only that an administrative action be supported by *some* evidence that would be admissible in a jury trial." (internal quotation marks and citation omitted)). Yet, in violation of our rules of appellate procedure, none of the references document where such an argument was preserved for our review. *See* Rule 12-318(A)(4) NMRA (requiring the brief in chief to include "a statement explaining how the issue was preserved" below with citation to the record). Based on our review of the record, we agree with the City that Tafoya is raising this issue for the first time on appeal. Accordingly, this issue is unpreserved and because Tafoya did not avail himself of the opportunity to explain in a reply brief whether an exception to preservation applies; or whether we should exercise our discretion to review the unpreserved issue, we decline to further address it. *See Druktenis*, 2004-NMCA-032, ¶ 122; *Gutierrez*, 2003-NMCA-077, ¶ 9.

**III.     The District Court's Determination That the City Had Just Cause to Terminate Tafoya's Employment Is Supported by Substantial Evidence, Is Not Arbitrary and Capricious, and Is Not Contrary to Law**

**{12}**    "In administrative appeals, we review the administrative decision under the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240. Just like the district court, we conduct a whole record review of the administrative hearing to determine if the decision was (1) supported by substantial evidence, (2) arbitrary and capricious, or (3) otherwise not in accordance with law. *See Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 13, 139 N.M. 122, 129 P.3d 158.

**A.     Substantial Evidence**

**{13}**    Tafoya argues that the district court's findings were not supported by substantial evidence.[4] In evaluating whether the district court's findings are supported by substantial evidence, "[w]e view [the] evidence in the light most favorable to the City while also considering contravening evidence." *Gallup Westside Dev., LLC v. City of Gallup*, 2004-NMCA-010, ¶ 11, 135 N.M. 30, 84 P.3d 78. "Substantial evidence supporting administrative agency action is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

**{14}**    As we understand them, Tafoya's sufficiency arguments are premised on an assumption that all of the evidence introduced by the City at the post-termination hearing was admitted in violation of the legal residuum rule and therefore should not be considered. As set forth above, we have rejected Tafoya's legal residuum rule argument. Based on that rejection, it is unclear what, if anything, remains of Tafoya's sufficiency arguments. Nevertheless, we briefly explain why we are unpersuaded that the hearing officer's and district court's findings are not supported by substantial evidence.

**{15}**    The hearing officer made the following findings, which were adopted by the district court: (1) in response to Lieutenant Martinez's statement that Tafoya's boots would not fit Cadet Hart because she has "tiny feet," Tafoya stated that he "loves tiny feet"; (2) in response to Cadet Hart's statement that "my feet are tiny because I have high arches," Tafoya stated that he "loves high arches and flat feet were ugly"; (3) Tafoya instructed Cadet Hart to try on his turnout gear, and Lieutenant Martinez stated it was okay to do so; (4) Tafoya stated, "Oh, good, now we get to see her feet"; and (5) when male firefighters were questioning sharing space with a female and seeing her in her underwear, Tafoya interjected, "I don't know why they'd complain about seeing a

---

4In making his substantial evidence argument, Tafoya also contends the district court's findings were "arbitrary and capricious." To the extent Tafoya is attempting to advance a separate and distinct argument from his substantial evidence argument by invoking the "arbitrary and capricious" standard, it is unclear what that argument might be and, for that reason, we give it no further consideration. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

beautiful woman in her underwear," which Cadet Hart perceived as having sexual connotations and made her feel uncomfortable. These findings are supported by the affidavits of both Lieutenant Martinez and Cadet Hart. While Tafoya offered testimony that may have contradicted or contextualized the allegations contained in those affidavits, any factual inconsistencies were for the fact-finder to resolve. *See Garcia v. Borden, Inc.*, 1993-NMCA-047, ¶¶ 15-16, 115 N.M. 486, 853 P.2d 737 (stating that credibility determinations are for the agency and those determinations are not for the appellate courts to reweigh); *Trujillo v. Emp. Sec. Dep't*, 1987-NMCA-008, ¶ 27, 105 N.M. 467, 734 P.2d 245 ("It is not the function of reviewing courts to determine the credibility of witnesses."); *Jaynes v. Wal-Mart Store No. 824*, 1988-NMCA-076, ¶ 8, 107 N.M. 648, 763 P.2d 82 ("It is for the trier of fact to weigh the evidence, determine the credibility of witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies.").

**{16}**     Additionally, Tafoya challenges two additional findings made by the district court on substantial evidence grounds: (1) Cadet Hart reported the incident to her supervisor; and (2) the City's sexual harassment policy was a zero tolerance policy. As to the first, the record contains a signed memorandum from Cadet Hart to both Fire Chief Padilla and Lieutenant Martinez wherein she reported Tafoya's alleged statements. Further, Lieutenant Martinez's affidavit mentions a discussion with Cadet Hart about the incident. As to the second, the record contains a copy of the City's sexual harassment policy; excerpts of the City's training on that policy; documentation that Tafoya was trained on the policy; and examples of Tafoya's use of the policy to discipline other employees. The foregoing evidence provided substantial evidence in support of the findings challenged by Tafoya.

## B.     Contrary to Law

**{17}**     As we mentioned, Tafoya's briefing is difficult to follow in many respects. Tafoya's challenges to the district court's decision invokes all of the buzzwords contained in our standard of review, often in a conclusory manner without citation to legal authority to support his assertions. This is especially apparent when it comes to Tafoya's arguments that the district court's decision was contrary to law. While the rationale is confounding, Tafoya seems to be advancing a claim that the hearing officer's decision that Tafoya did not violate the City's sexual harassment policy was correct and the district court's contrary conclusion was not in accordance with the law. For the reasons that follow, we agree with the district court that the hearing officer's decision was contrary to law. *See Selmeczki*, 2006-NMCA-024, ¶ 13 (reviewing de novo whether an agency's decision was contrary to law).

**{18}**     The hearing officer found that Tafoya "made inappropriate comments in the presence of a female firefighter cadet and a female fire lieutenant to whom she reported" and that Tafoya "has supervisory responsibilities over" the cadet. However, despite these findings, the hearing officer concluded that "the evidence does not support the determination that a violation of the City's sexual harassment policy

occurred in this case." The hearing officer appears to have arrived at this conclusion by way of three determinations that we conclude were contrary to law.

{19}   First, the hearing officer improperly looked only for direct evidence that Tafoya's conduct was unwanted, unwelcomed, and had "the effect of creating an offensive, intimidating, degrading or hostile work environment." Personnel Policy § 1.4.1(B) at 5. We are unaware of any authority requiring direct evidence in these circumstances, and Tafoya has not directed us to any. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Instead, as the district court correctly pointed out, our law demonstrates that circumstantial evidence can suffice. *See Smyers v. City of Albuquerque*, 2006-NMCA-095, ¶ 17, 140 N.M. 198, 141 P.3d 542 ("Circumstantial or direct evidence can amount to substantial evidence.").

{20}   Second, the hearing officer determined that Tafoya "did not initiate the topic of inappropriate conversation, but rather he was reacting and responding to others." While this may be relevant when considering the whole record, we are not aware of any authority, and Tafoya has cited none, that a person must initiate inappropriate conversation for that conversation to constitute sexual harassment. *See Curry*, 2014-NMCA-031, ¶ 28. Further, nothing in the City's sexual harassment policy can be said to impose such a requirement. *See* Personnel Policy § 1.4.1. at 5. Finally, we agree with the district court that it seems nonsensical to impose such a requirement here when Tafoya was in a supervisory position. *See Selmeczki*, 2006-NMCA-024, ¶ 20 (stating that "supervisory staff clearly . . . serve as examples for subordinates").

{21}   Third and finally, the hearing officer appears to have relied on cases involving claims of sexual harassment under the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2024), when reaching its decision that Tafoya did not violate the City's sexual harassment policy. Using those cases, Tafoya argued that New Mexico only recognizes "hostile work environment" and "quid pro quo" sexual harassment claims. Here, the question was not whether the City could prove a claim under the New Mexico Human Rights Act. Instead, it was whether the City could demonstrate that Tafoya violated the City's sexual harassment policy. In that regard, we note that the City's policy is much broader than Tafoya argues. It provides discipline for sexually harassing conduct that had "the effect of creating an *offensive*, *intimidating*, *degrading or hostile* work environment." Personnel Policy § 1.4.1(B) at 5 (emphasis added). Therefore, to the extent that the hearing officer interpreted the City's sexual harassment policy counter to its express language, it did so in error.

{22}   In light of our resolution of the hearing officer's misapprehensions and misapplications of the law, we turn back to the evidence in the record. The City's policy defines sexual harassment in relevant part as verbal conduct that "has the effect of creating an offensive, intimidating, degrading or hostile work environment." *Id.* It also provides that sexually harassing conduct includes "[s]exual flirtation," "[v]erbal comments of a sexual nature," and "suggestive comments about an individual's dress or body." Personnel Policy § 1.4.1(C) at 5. The record supports the district court's

determination that Tafoya's comments, detailed above, constitute sexual flirtation, verbal comments of a sexual nature, or suggestive comments about Cadet Hart's body, in violation of the City's sexual harassment policy. Therefore, we must next determine whether the record, considered as a whole, demonstrates that those comments had the effect of creating an offensive, intimidating, degrading, or hostile work environment. *See* Personnel Policy § 1.4.1(B) at 5.

**{23}**     Here, Cadet Hart reported Tafoya's comments both to her supervising lieutenant and the fire chief. As the district court notes, those reports are circumstantial evidence that Cadet Hart believed Tafoya's comments violated the City's sexual harassment policy. That is, that policy requires any employee that knows of a violation of the policy to report it to their supervisor or to the human resources director and Cadet Hart did just that. *See* Personnel Policy § 1.4.1(D) at 5. As such, considering the whole record, we agree with the district court that Tafoya's comments had the effect of creating an offensive, intimidating, degrading, or hostile work environment and, accordingly, that Tafoya violated the City's sexual harassment policy. To the extent that Tafoya argues that such a conclusion can only be reached by an impermissible reweighing of the evidence, we disagree because the hearing officer's decision was based on misapplication and misapprehension of law, and not evidentiary rulings or credibility determinations. For that reason, the hearing officer's decision was contrary to law. Because Tafoya's arguments concerning reinstatement and back pay rely on a predicate we have concluded is not established here—i.e., that just cause did not support his termination—we decline to further discuss them.

**CONCLUSION**

**{24}**     For these reasons, we affirm the district court.

**{25}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**J. MILES HANISEE, Judge**